Leopold Blum vs. Harry Soren } No. 68546

### June 12, 1928

CAPOTOSTO, J. In an action for breach of contract the plaintiff recovered a verdict of $600. The defendant, who asks for a new trial upon the usual grounds, practically concedes liability but insists that the damages awarded are excessive.

The plaintiff, a mural decorator and painter, on June 2, 1926, entered into a written contract with the defendant to do certain work, according to plans and specifications, for $1,965 on a house which the defendant was building for

Dr. Starr. By letter, dated June 15, 1926, sent in an envelope post-marked June 19, 1926, the defendant notified the plaintiff that: "I regret very much to inform you that the contract we made for the painting in Dr. Starr's cottage . . . will have to be cancelled. All this is due to the fact that it has been taken out of my hands by the owner himself." The plaintiff thereupon brought suit for his estimated profit under the contract.

The defendant claims that before the contract was signed he told the plaintiff that in order for him to get the job he must secure the approval of Mrs. Starr, and that he, the defendant, was deceived by the plaintiff in this regard by the plaintiff stating that he was acceptable to Mrs. Starr, while as a matter of fact he was not. The plaintiff denied this and insisted that Mrs. Starr was satisfied with the samples which he had submitted for her consideration. Mrs. Starr, who testified for the defendant, was an over-anxious witness, so much so, that during the whole course of the trial, by her eagerness on the stand and her demeanor in the court room, it was difficult to say whether she or the defendant was the real party in interest. The important phase of the testimony is the defendant's own conduct. Although he had had no previous dealings with the plaintiff, he signed a contract giving the plaintiff the work without verifying whether or not the plaintiff was acceptable to Mrs. Starr. Assuming for the moment that this builder of 18 years' experience blindly relied upon what the plaintiff told him, then it is reasonable to expect that upon discovery of the fraud practiced upon him he would have revoked any agreement which he might have made with the plaintiff in language which would have left no doubt as to his meaning. The letter of June 15 utterly fails to disclose any feeling of resentment and even expresses a regret at being obliged to cancel the contract because the matter "has been taken out of my hands by the owner himself." The real explanation is probably to be found in the inalienable privilege of a woman to change her mind. The issue of liability was probably decided by the jury.

The plaintiff impressed the Court as a man, who, with years of artistic training and practical experience behind him, was in a position to do the work at a much greater profit to himself than a less experienced man. The preparation of his own materials, rather than purchasing them in the open market, is one instance where he could save a considerable sum for himself. He testified that he would have made a net profit of about $1,100. The defendant met this claim through the testimony of the man who got the contract after the plaintiff was discharged. According to his figures, the plaintiff's net profit would have been $115. With the component elements and explanations which went to make up these two figures before it, the jury assessed the damages at $600. This sum is reasonable and justified.

Motion for new trial denied.

For plaintiff: George F. Troy.

For defendant: Nathan Hilfer.